UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE KIEBALA | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) No. 1:16 CV 7478 |
| | ) Hon. Marvin E. Aspen |
| DEREK BORIS, | )<br>) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

Presently before us is Defendant Derek Boris' motion to dismiss Plaintiff George Kiebala's pro se complaint for failure to state a claim upon which relief may be granted. (Dkt. No. 7.) For the reasons stated below, we grant Boris' motion to dismiss Counts III and V, without prejudice. Further, we allow Curvy Road Holdings, LLC ("Curvy Road") and Exotic Car Share, LLC ("ECS"), as real parties in interest, thirty days to ratify, join, or be substituted into this action and prosecute their claims for breach of the non-disclosure and revenue share agreements, and for tortious interference with business expectancy. If they fail to do so, those claims are dismissed with prejudice.

## FACTUAL BACKGROUND

At the motion to dismiss stage, we accept all well-pleaded factual allegations as true and draw all inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). Kiebala is the owner of Curvy Road, which "provides time ownership of high-end automobiles to customers who purchase . . . the right to drive [those] vehicles for a number of weeks per year." (Compl. ¶ 8.) Curvy Road's vehicles are generally owned by individuals who permit Curvy Road to use them as part of its "time-ownership" program, in exchange for a "portion of the revenue received by Curvy Road for the use of the

vehicles." (*Id.*) Kiebala also owns ECS, a similar business that "offers individual weeks and weekends of vehicle usage for a fee." (*Id.* ¶ 9.) ECS is a "Chicago-only membership club" and, unlike Curvy Road, generally owns the vehicles offered to customers. (*Id.*)

In May 2009, Kiebala and Boris began to discuss placing one of Boris' vehicles into Curvy Road's program. (*Id.* ¶ 11.) Kiebala requested Boris sign a non-disclosure agreement, which he did on July 29, 2009, "agreeing to keep confidential Curvy Road's offering materials and any and all additional information pertaining to Curvy Road, including but not limited to Curvy Road's business practices, policies, procedures, strategies and financial information." (*Id.* ¶ 13.) On September 15, 2009, Boris and Kiebala executed a "revenue share agreement," providing that Boris would "receive royalty payments based on a portion of the amount paid by members to Curvy Road for use of [his vehicle]." (*Id.* ¶¶ 14–15.) The revenue share agreement further provided that it would renew every six months "unless either party notifies the other party in writing of their intent not to renew prior to the end of the term." (*Id.*, Ex. B at Pg. ID#: 23.) Boris placed his vehicle into Curvy Road's program on November 18, 2009. (*Id.* ¶ 17.)

Kiebala alleges that Boris "abruptly withdrew" his vehicle from Curvy Road's program in May 2010 without providing notice of his intent not to renew the revenue share agreement. (*Id.* ¶¶ 21–22.) After returning Boris' vehicle, Kiebala issued a final payment to Boris. (*Id.* ¶ 25.) Kiebala's final check to Boris "did not clear," but Kiebala alleges he "attempt[ed] to resolve the payment issue" and contacted Boris concerning the final payment, "via email, on July 16, 2010; July 20, 2010; July 22, 2010; and August 6, 2010." (*Id.* ¶ 26.) Kiebala alleges Boris' withdrawal without providing advance notice was a breach of their revenue share agreement. (*Id.* ¶¶ 66–70.)

Kiebala alleges that Boris subsequently made several internet postings on consumer review websites containing false and misleading statements concerning Kiebala's business practices, and containing proprietary information in violation of the non-disclosure agreement Boris signed.  A February 1, 2011 posting stated that both Curvy Road and ECS lease their cars from owners for "negotiated commissions," that Kiebala "neglected to pay thousands of owed commissions," and that he attributed his inability to pay those commissions to his "wife 'running' his bank account." (*Id.* ¶ 29; *Id.*, Ex. C at Pg. ID#: 25.)  That post further stated that Curvy Road "is a FRAUD company," that Kiebala "cannot be trusted, . . . has lied repeatedly and . . . will steal your money." (*Id.*)  Kiebala states that "[t]hese libelous statements also were posted earlier in December, 2010 on the website scamexposure.com." (*Id.* ¶ 39.)

A July 20, 2011 posting stated that Curvy Road and ECS "rents some of its exotic cars from individual owners, . . . and pays out a commission based off of actual customer use," that the companies failed to pay "THOUSANDS of owed commissions" because Kiebala's wife took his money, that "lying and stealing are part of George Kiebala, Curvy Road, and Exotic Car Share's daily management." (*Id.*, Ex. E at Pg. ID#: 29.)  That posting also referred to Kiebala as a "thief," and stated that he and his companies "simply cannot be trusted." (*Id.*)  Kiebala alleges that Boris updated this posting with identical information on July 22, 2015 and posted a separate, but identical, statement on July 21, 2015. (Compl. ¶¶ 41, 49.)  Finally, Kiebala alleges that Boris has "threatened to post further statements on 'various websites.'" (*Id.* ¶ 54.)

Kiebala sued Boris on July 22, 2016, alleging Illinois state law claims for breach of the non-disclosure agreement, breach of contract, libel, tortious interference with business expectancy, and intentional infliction of emotional distress.  Boris moved to dismiss Kiebala's complaint on September 19, 2016.

**LEGAL STANDARD**

Boris' motion to dismiss for failure to state a claim upon which relief may be granted is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] "The purpose of the motion to dismiss is to test the sufficiency of the complaint, not decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (internal quotation marks omitted) (quoting *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). Dismissal pursuant to Rule 12(b)(6) is proper only if a complaint lacks enough facts "to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *accord. Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65). That is, while the plaintiff need not plead "detailed factual allegations," the complaint must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65.

**ANALYSIS**

**I.    Breach of Non-Disclosure and Revenue Share Agreements (Counts I and II)**

Boris first argues that Kiebala's claims for breach of the non-disclosure agreement and breach of the revenue sharing agreement (Counts I and II) must be dismissed because Curvy Road, but not Kiebala, is a party to those contracts. Kiebala contends, though, that he may

---

[1] Boris also moved to dismiss pursuant to Rule 12(b)(7) for failure to join indispensable parties. Because we find Kiebala's complaint must be dismissed for failure to state a claim under Rule 12(b)(6), we do not address that motion.

maintain an action for those alleged breaches because they "directly damaged [him] by sharing his business model online, visible to all competitors, and hurt his personal reputation by causing him to disappoint customers." (Pl.'s Resp. (Dkt. No. 16) at 13.)

The Federal Rules of Civil Procedure require "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Because Curvy Road is an LLC organized under Illinois law, we look to Illinois law to determine whether it is a real party in interest. *Kroupa v. Garbus*, 583 F. Supp 2d. 949, 952 (N.D. Ill. 2008). "Under Illinois law, a cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party, . . . or by an intended third-party beneficiary of the contract." *Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 602 (7th Cir. 2001) (citing *White Hen Pantry, Inc. v. Cha*, 574 N.E.2d 104, 109, 204 Ill. App. 3d. 627, 635 (1st Dist. 1991); *Altevogt v. Brinkoetter*, 421 N.E.2d 182, 186, 85 Ill. 3d 44, 53 (Ill. 1981)).

Kiebala is not a party to either the non-disclosure agreement or the revenue sharing agreement. Kiebala signed the revenue sharing agreement as the Chief Executive Officer of Curvy Road, but not in his individual capacity. (Compl., Ex. B at Pg. ID#: 24). Kiebala is also not a party to the non-disclosure agreement. Kiebala's signature appears nowhere on the form. Rather, it is signed by "Curvy Road Holdings, LLC." (*Id.*, Ex. A at Pg. ID#: 19.)

Kiebala may thus only bring an action for breach of either the non-disclosure agreement or revenue sharing agreement if he is in contractual privity with Curvy Road, or was an intended third-party beneficiary of the contract. *Kaplan*, 266 F.3d at 602. Privity of contract is a "mutual or successive relationship to the same rights of property." *Collins Co., Ltd. v. Carboline Co.*, 532 N.E.2d 834, 839, 125 Ill. 2d 498, 511 (Ill. 1988). Kiebala and Curvy Road have neither a mutual nor successive relationship with regards to the contract rights in question. While Kiebala

is managing member of Curvy Road, a "limited liability company is a legal entity distinct from its members." 805 ILCS 180/5–1. That Curvy Road may have some contractual rights flowing from either agreement does not entail its managing members, such as Kiebala, have a mutual relationship with respect to those contract rights. *See Freed v. JPMorgan Chase Bank, N.A.*, No. 12 C 1477, 2012 WL 6193964, at *4 (N.D. Ill. December 12, 2012) ("[T]he claim was undermined by the legal principle (applicable to LLCs as well as to corporations) that 'an action for harm to the corporation must be brought in the corporate name.'" (quoting *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996)); *cf.* 805 ILCS 180/10–10 ("[T]he debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager.").

Neither does Kiebala have a successive relationship with Curvy Road's contractual rights flowing from either agreement. For example, there has been no transfer or assignment of Curvy Road's contractual rights to Kiebala in his individual capacity. *See Kaplan*, 266 F.3d at 602–04 (finding a corporation's assignment of interest in a land trust was not sufficient to establish privity of contract between the plaintiff and a third party where the assignment did not explicitly mention those contracts rights, and there was no explicit transfer of those rights by any other instrument); *Collins*, 532 N.E.2d at 839, 125 Ill. 2d at 511 ("While 'privity requires that the party suing has some contractual relationship with the one sued,' . . . privity accompanies a valid assignment of contract." (citation omitted)). Kiebala instead appears to argue that he is entitled to sue for Boris' alleged breach of his contracts with Curvy Road merely because he is a managing member of and has an ownership interest in that LLC. (Pl.'s Resp. at 13–14.) Given

6

Illinois law concerning the separate legal identities of limited liability companies and their members, 805 ILCS 180/5–1, Kiebala's argument is insufficient to establish he was in privity of contract with Boris, *cf.* 805 ILCS 180/10–10 ("[T]he debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company."). Because Curvy Road is the only party to the contract with Boris, it is the real party in interest pursuant to Federal Rule of Civil Procedure 17(a). However, we "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3); *Forza Tech., LLC v. Premier Research Labs, LP*, No. 12 CV 7905, 2013 WL 6355383, at *4 (N.D. Ill. Dec. 5, 2013). While Kiebala asserts that "Curvy Road and ECS have no intention of pursuing damages," we allow them thity days to ratify, join, or be substituted into the action and prosecute their claims for breach of the non-disclosure and revenue sharing agreement. (Pl.'s Resp. at 15.) If they fail to do so, those claims as set forth in Counts I and II will be dismissed with prejudice.

## II.     Libel (Count III)

Count III of Kiebala's complaint alleges Boris made several defamatory online statements about him, including that Kiebala's company is a fraud, and he is a liar and thief who cannot be trusted. (Compl. ¶ 72.) Boris contends Kiebala's libel claim is barred by the one-year statute of limitations for defamation claims set out in 5/13–201. *See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.")

While Kiebala lists several specific instances of Boris' alleged defamatory postings, the most recent original post was published on July 21, 2015. (Compl. ¶ 49.) The statute of limitations for Kiebala's defamation claim flowing from those statements thus expired on July 21, 2016. Because Kiebala did not file his complaint on July 22, 2016, his claim is untimely. Kiebala argues, though, that additional statements originally posted on July 20, 2011 have been republished such that his defamation claim flowing from those statements is timely. (Pl.'s Resp. at 8–10). That post referred to Kiebala as a "thief," and stated, in relevant part, that Kiebala failed to pay commissions, and that "lying and stealing are part of George Kiebala, Curvy Road, and Exotic Car Share's daily management." (Compl. ¶ 43.) Because the posting provides that it was "updated" on July 22, 2015, Kiebala argues it "makes it appear that additional alleged wrongdoing or new alleged wrongdoing occurred in 2015" and thus the statute of limitations for his libel claim stemming from his post expired on July 22, 2016, or the date he filed this action. (Pl.'s Resp. at 8–10.)

The Illinois Uniform Single Publication Act, 740 ILCS 165/1, "provides that a claim for relief for defamation is complete at the time of first publication; later circulation of the original publication does not trigger fresh claims." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 615 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2829 (2014). The Illinois single-publication rule applies to internet postings as well as more traditional forms of media. *Id.* at 615–16. While "subsequent appearances or distributions of copies of the original publication are of no consequence to the creation or existence of a cause of action," a republication of the allegedly defamatory information "can constitute a new cause of action if the publication is altered so as to reach a new audience." *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1194, 369 Ill. App. 3d 318, 325 (2d Dist. 2006).

As Kiebala acknowledges, the information in the "updated" July 22, 2015 post was identical to the information in the July 20, 2011 post. (Compl. ¶ 41.) The updated post also does not target a new audience. Kiebala argues "the 'updated' post means that the post appears closer to the top of internet searches," such that it is "now one of the very first things that potential investors or customers see when they search Mr. Kiebala's name on the internet." (Pl.'s Resp. at 8.) That the internet posting may be more accessible, however, does not re-trigger the statute of limitations for Kiebala's libel claim. Rather the "updated" posting was intended to reach the same audience as the July 20, 2011 posting—Kiebala's "potential investors or customers." (*Id.*) *See Blair*, 859 N.E.2d at 1194, 369 Ill. App. 3d at 325 (finding that, even though a photograph was presented through various mediums at different times over a nine year span, the republications did not constitute new causes of action because "the purpose of the use of the photograph" was consistent at all times). Thus, the updated July 22, 2015 post is not a republication that "would constitute a new cause of action and retrigger the statute of limitations." *Blair*, 859 N.E.2d at 1194, 369 Ill. App. 3d at 325. Accordingly, the one-year statute of limitations for Kiebala's libel claim stemming from that post expired on July 20, 2012, over four years before he filed this action. Likewise, the most recent original post supporting his libel claim was published on July 21, 2015, one year and one day before he filed his complaint. (Compl. ¶ 49.) Accordingly, his claim is dismissed as time barred.

**III.     Tortious Interference with Business Expectancy (Count IV)**

Count IV of Kiebala's complaint alleges tortious interference with business expectancy. To state a claim for tortious interference under Illinois law, Kiebala must allege "(1) his reasonable expectation of entering into a valid business relationship; (2) defendant['s] knowledge of his expectancy; (3) purposeful interference by the defendant[] preventing his

9

expectancy from being fulfilled; and (4) damages resulting from such interference." *Hackman v. Dickerson Realtors, Inc.*, 520 F. Supp. 2d 954, 971 (N.D. Ill. 2007) (citation omitted). Boris again argues, however, that Kiebala is not the real party in interest pursuant to Federal Rule of Civil Procedure 17(a) with regard to his tortious interference claim.

We again look to Illinois law to determine whether Curvy Road and ECS, rather than Kiebala, are the real parties in interest, because Curvy Road and ECS are incorporated under the laws of Illinois. *Kroupa*, 583 F. Supp 2d. at 952. In Illinois, an action for harm to an LLC must be brought by the LLC. *Freed*, 2012 WL 6193964, at *4 (quoting *Frank*, 83 F.3d at 160). While Kiebala may have suffered indirect harm from the actions alleged here, those harms flow only from his status as a managing member of Curvy Road and ECS. Kiebala's complaint alleges that he "had a reasonable expectation of entering into business relationships with other investors and customers in the ECS and Curvy Road business." (Compl. ¶ 79.) In his response, Kiebala further contends "Boris' posts intentionally and specifically discouraged investors and caused a drop in clients to the business which have, in turn, damaged Kiebala's ability to earn an income through his reasonable expectation of business opportunities through his companies." (Pl.'s Resp. at 13.) These business relationships would have belonged to Curvy Road and ECS, not Kiebala in his individual capacity, and thus they are the real parties in interest. *Forza*, 2013 WL 6355383, at *3 (finding that an LLC was the real party in interest for a tortious interference claim, as opposed to its owner, even though comments giving rise to the claim targeted the owner, and she was indirectly harmed due to the LLC's loss of business relationships). Accordingly we allow Curvy Road and ECS thirty days to ratify, join, or be substituted into the action and prosecute their claims for tortious interference. If they fail to do so, that claim will be dismissed with prejudice.

## IV. Intentional Infliction of Emotional Distress (Count V)

Count V of Kiebala's complaint alleges an intentional infliction of emotional distress claim against Boris stemming from his statements in various internet postings. To sufficiently state a claim for intentional infliction of emotional distress under Illinois law, Kiebala must allege Boris' conduct was "truly extreme and outrageous," that Boris either intended or knew there was a high probability his conduct would cause severe emotional distress, and that the conduct did "in fact cause *severe* emotional distress." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80, 207 Ill. 2d 263, 269 (Ill. 2003) (emphasis in original) (internal quotation marks omitted) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 809, 126 Ill. 2d 78, 86 (Ill. 1988)).

We first address Boris' argument that Kiebala's claim for intentional infliction of emotional distress is barred by the two year statute of limitations set out in 735 ILCS 5/13–202. *See Pavlik v. Kornhaber*, 761 N.E.2d 175, 186, 326 Ill. App. 3d 731, 744 (2d Dist. 2001) (citing 735 ILCS 5/13–202) ("We agree that the applicable statute of limitations for intentional infliction of emotional distress is two years."); *see also Logan*, 644 F.3d at 582 ("While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.")

In Illinois, a cause of action for intentional infliction of emotional distress "accrues when the interest is invaded." *Pavlik*, 761 N.E.2d at 186, 326 Ill. App. 3d at 745 (citing *Hyon Waste Mgmt. Servs., Inc. v. City of Chi.*, 574 N.E.2d 129, 132, 214 Ill. App. 3d 757, 762 (2d Dist. 1991)). To the extent Kiebala's claim stems from the alleged defamatory statements made in the July 21, 2015 internet post, his claim falls well within the two year statute of

limitations and is timely.  Kiebala may not, however, bring an intentional infliction of emotional distress claim for the statements in the February and July 2011 postings, as the statute of limitations for each expired more than three years before he filed this action.

Illinois has adopted a "continuing violation" rule, such that "where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 190, 199 Ill. 2d 325, 345 (Ill. 2002).  Kiebala contends that the July 20, 2011 posting was updated on July 22, 2015, and so we must determine whether the 2015 "update" constitutes a continuing violation such that it re-triggered the statute of limitations.  "A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Feltmeier*, 798 N.E.2d at 85, 207 Ill. 2d at 278 (Ill. 2003).  Just as we found that the updated July 2015 post was not a republication triggering the statute of limitations for Kiebala's defamation claim, so too must we find the post does not constitute a "continued" unlawful act for the purposes of the continuing violation rule.  While the updated post contains no new information from the original post, (Compl. ¶ 41), Kiebala argues that it now is more readily accessible via internet searches, (Pl.'s Resp. at 8).  Assuming *arguendo* that is true, the act from which Kiebala's intentional infliction of emotional distress claim flows is the original posting of the statements, not the updating of the post.  The harm from the update, if any, is best characterized as a continual ill effect of the original post, which does not re-trigger the statute of limitations.  *Feltmeier*, 798 N.E.2d at 85, 207 Ill. 2d at 278. Kiebala's intentional infliction of emotional distress claim is thus untimely to the extent it is based on the July 20, 2011 postings.

Second, Boris argues Kiebala has insufficiently alleged his posting of the statements online was "extreme and outrageous," and thus must be dismissed for failure to state a claim. (Mtn. ¶¶ 51–64.) We look only to the content of the July 21, 2015 posting, as it is the only posting upon which Kiebala may base a timely intentional infliction of emotional distress claim. We use an "objective standard based on the facts and circumstances of a particular case" to determine whether conduct is extreme and outrageous. *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866, 318 Ill. App. 3d 736, 745 (1st Dist. 2000). To qualify as "extreme and outrageous," Boris' conduct "must be so extreme as to go beyond all possible bounds of decency." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211, 154 Ill. 2d 1, 21 (Ill. 1992). "'[M]ere insults, indignities, threats, annoyances, petty oppressions or other trivialities' do not qualify as outrageous conduct." *Id.* (quoting *McGrath*, 533 N.E.2d at 809, 126 Ill. at 86). Important factors bearing on whether conduct rises to the level of outrageous include whether Boris misused some authority, actual or apparent, he had over Kiebala, and whether Boris knew that Kiebala might be particularly susceptible to emotional distress. *Id.*

The July 2015 posting allegedly made by Boris stated Kiebala failed to pay commissions owed to vehicle owners, that "lying and stealing are part of George Kiebala, Curvy Road, and Exotic Care Share's daily management," and that Kiebala "simply cannot be trusted." (Compl., Ex. F at Pg. ID#: 31.) Kiebala asserts, in conclusory fashion, that such conduct was "extreme and outrageous." (Compl. ¶ 84.) *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim" are not entitled to a presumption of truth, and are not considered when determining the sufficiency of the complaint). However, even construing his complaint liberally given his pro se status, Kiebala has failed to adequately allege the conduct is extreme and outrageous.

*Anderson v. Hardmon*, 241 F.3d 544, 545 (7th Cir. 2001) ("[P]ro se pleadings are held to less exacting standards than those prepared by counsel and are to be liberally construed."). He has provided no allegations sufficient to suggest that "no reasonable man could be expected to endure" Boris' alleged internet posts. *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (citation omitted) (affirming dismissal of plaintiff's intentional infliction of emotional distress claim and finding the defendant's extensive discriminatory conduct, including eavesdropping on her telephone calls and ignoring her concerns that her vehicle was vandalized on several occasions was not extreme and outrageous); *Lane v. Le Brocq*, No. 15 C 6177, 2016 WL 5955536, at *1, 7–8 (N.D. Ill. Oct. 12, 2016) (finding defendant's conduct was not extreme and outrageous, even though she told multiple agencies and people that plaintiff was a thief and unfit to practice law). And although Kiebala alleges Boris threatened to continue making internet postings, (Compl. ¶ 54), he has not alleged Boris has a unique position of power which "gives him the ability to adversely affect" Kiebala's interests, *Kolegas*, 607 N.E.2d at 212, 154 Ill. 2d at 22. Plaintiff has failed to adequately allege Boris' conduct was extreme and outrageous, and we therefore grant the motion to dismiss Count V of Kiebala's complaint.

## CONCLUSION

For the foregoing reasons, we grant Boris' motion to dismiss Counts III and V of Kiebala's complaint.

Counts I, II, and IV are dismissed, without prejudice. On or before March 16, 2017, Curvy Road and ECS may ratify, join, or be substituted into this action and prosecute their claims for breach of the non-disclosure and revenue share agreements, and for tortious

14

interference with business expectancy. If they fail to do so, Counts I, II, and IV will be dismissed with prejudice. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: February 14, 2017
       Chicago, Illinois