UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE KIEBALA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16 CV 7478 |
| | ) | Hon. Marvin E. Aspen |
| DEREK BORIS, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Defendant Derek Boris' motion to dismiss pro se Plaintiff George Kiebala's amended complaint. (Dkt. No. 32.) Also before us is Boris' motion for sanctions pursuant to Federal Rule of Civil Procedure 11. (Dkt. No. 34.) For the reasons stated below, we grant Boris' motion to dismiss the amended complaint with prejudice and deny the motion for sanctions.

## BACKGROUND

We assume familiarity with the basic background facts of this case. *See Kiebala v. Boris*, No. 16 C 7478, 2017 WL 590287, at *1–2 (N.D. Ill. Feb. 14, 2017) (Dkt. No. 19); *Kiebala v. Boris*, No. 16 C 7478, 2017 WL 1161177, at *1–2 (N.D. Ill. Mar. 29, 2017) (Dkt. No. 27). At the motion to dismiss stage, we accept all well-pleaded factual allegations as true and draw all inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

The dispute between the parties concerns a "revenue share agreement" between Kiebala's luxury car share business, Curvy Road Holdings, LLC ("Curvy Road"), and Boris. Curvy Road

provides "time ownership of high-end automobiles to members who purchase units of time-ownership for the right to drive these automobiles for a number of weeks each year." (Am. Compl. (Dkt. No. 31) ¶¶ 10, 16.) Pursuant to the agreement, Boris agreed to include his Lamborghini Gallardo in Curvy Road's program and to allow other members to drive it in exchange for royalty payments. (*Id.* ¶¶ 13–17.) Kiebala alleges Boris "abruptly withdrew" his vehicle from the program in May 2010 in breach of their agreement. (*Id.* ¶¶ 23–27.) Kiebala promptly returned Boris' vehicle, paid the cost of transporting the vehicle, prepared a "final recap of usages," and issued a payment to Boris on June 18, 2010. (*Id.* ¶¶ 26–28.) However, the royalty check did not clear, and thereafter, Kiebala communicated to Boris that he had payment issues along with "both medical and financial challenges." (*Id.* ¶¶ 29–33.)

Kiebala alleges Boris then began posting "a number of false and libelous statements" about Kiebala, Curvy Road, and Kiebala's other business, Exotic Car Share, LLC ("ECS"), on various consumer review websites from December 2010 through March 2017. (*Id.* ¶¶ 35–55.) Kiebala alleges the postings contained false and misleading statements concerning his business practices and revealed proprietary information in violation of the non-disclosure agreement Boris signed. Specifically, Kiebala asserts Boris posted a review on a consumer review website on December 21, 2010, stating Curvy Road and ECS lease their cars from owners for "negotiated commissions," that Kiebala "neglected to pay thousands of owed commissions," and that he attributed his inability to pay those commissions to his "wife 'running' his bank account." (*Id.* ¶ 36.) That post further stated that Curvy Road "is a FRAUD company," and that Kiebala "cannot be trusted, . . . has lied repeatedly and . . . will steal your money." (*Id.*) Kiebala alleges the same information was posted on different websites on December 22, 2010, and again on January 31, 2011 and February 1, 2011. (*Id.* ¶¶ 37–39).

Kiebala alleges that on June 26, 2011 and again on June 27, 2011, "Boris' campaign against Kiebala continued" with posts stating Curvy Road, ECS, and Kiebala "NEVER PAID ME," calling Kiebala "a lair [sic] and a cheat." (*Id.* ¶¶ 40–42.) The reviews further stated Kiebala "made promises that he did not keep," alleged he ran a "fraud business," and warned "DON'T time share or EVER EVER place your car into the program." (*Id.*)

On July 20, 2011, Boris again posted on consumer review websites, stating that Curvy Road and ECS failed to pay "THOUSANDS of owed commissions" because Kiebala's wife took his money and that "lying and stealing are part of George Kiebala, Curvy Road, and Exotic Car Share's daily management." (*Id.* ¶ 43.) That posting also stated "I would advise EVERYONE, customers and potential partners, to STAY AWAY from this thief, or you risk losing everything." (*Id.*) Kiebala alleges that Boris "took a break from his attacks" for several years, but contacted Kiebala by email in 2014, "seeking money and disputing Kiebala's calculations regarding the amounts owed," and threatening Kiebala "in an effort to extort money from him" by threatening to post "my review of your company on various websites." (*Id.* ¶¶ 44–47.) After Kiebala's "attempts to reach a settlement with Boris to resolve the parties' dispute" proved unsuccessful, Boris updated his July 20, 2011 review by posting identical information on consumer review websites on July 21, 2015, July 22, 2015, and March 20, 2017. (*Id.* ¶¶ 48–52.)

Kiebala brought this diversity action on July 22, 2016. On February 14, 2017, we granted Boris' motion to dismiss Kiebala's original complaint, finding his libel and intentional infliction of emotional distress claims time barred, and concluding Kiebala was not the real party in interest for his breach of non-disclosure agreement, breach of contract, and tortious interference claims. (Dkt. No. 19.) We allowed Kiebala's businesses, Curvy Road and ECS,

3

until March 16, 2017 to ratify, join, or be substituted in this action to prosecute the breach of non-disclosure, breach of contract, and tortious interference claims. (*Id.* at 14–15.)

Kiebala moved for reconsideration of our February 14, 2017 Order and additionally sought leave to file an amended complaint. (Dkt. No. 21.) On March 29, 2017, we denied his motion for reconsideration, but allowed his alternative motion to file an amended complaint insofar as he could (1) "allege additional invasions from which independent intentional infliction of emotional distress claims may flow"; (2) allege additional information regarding Boris' internet postings, "which taken together could rise to the level of a timely 'continuing violation'"; and (3) allege a tortious interference with business expectancy claim that does not 'flow only from his status as a managing member of Curvy Road and ECS," and instead establishes he is the real party in interest. (Dkt. No. 27 at 6.)

On May 23, 2017, Kiebala filed an amended complaint. (Am. Compl. (Dkt. No. 31).) The amended complaint includes the same five counts as the original complaint: (1) breach of non-disclosure agreement; (2) breach of contract; (3) libel; (4) tortious interference with business expectancy; and (5) intentional infliction of emotional distress. (*Id.*) Boris moved to dismiss the amended complaint on June 13, 2017 and moved for Rule 11 sanctions on June 14, 2017. (Mot. to Dismiss (Dkt. No. 32); Mot. for Sanctions (Dkt. No. 34).)

## ANALYSIS

### I. MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) governs Boris' motion to dismiss for failure to state a claim upon which relief may be granted. In ruling on a 12(b)(6) motion, the court accepts "the allegations in the complaint as true unless they are 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" *Katz-Crank*, 843 F.3d 641, 646

4

(7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). The complaint must state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65). That is, while the plaintiff need not plead "detailed factual allegations," the complaint must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65.

### A. Breach of Non-Disclosure Agreement, Breach of Contract, and Tortious Interference Claims

First, we may quickly dispatch Boris' motion to dismiss Counts I through III of the amended complaint, which re-allege Kiebala's claims for breach of the non-disclosure agreement, breach of contract, and tortious interference with business expectancy. Counts I through III are identical to Kiebala's original pleading, but the amended claims now include a disclaimer after the heading for each count stating "Dismissed pursuant to Court Order dated 2/14/17." (*See* Am. Compl. at 18–20.) Boris argues that the doctrine of *res judicata* bars these claims as we dismissed them in our February 14, 2017 Order. (Mot. to Dismiss at 4–5.) The dismissal became one with prejudice after the real parties in interest—Curvy Road and ECS—failed to ratify, join, or be substituted in this action. (Dkt. No. 19 at 7, 14–15.) Kiebala concedes these counts were dismissed with prejudice and indicates the disclaimers were intended reflect that understanding. (Pl.'s Resp. (Dkt. No. 49) at 3.) He suggests Boris misunderstood the

5

disclaimers and clarifies he is not attempting to "disregard the Court's orders, ignore the Court's authority, [or] reassert causes of action that the Court had plainly said could not go forward," and he has "no intention of attempting to revisit the dismissal of those causes of action." (*Id.*) Accordingly, there is no dispute that the breach of the non-disclosure agreement, breach of contract, and tortious interference with business expectancy claims should be dismissed with prejudice, as Kiebala did not intend to re-assert them. We therefore grant Boris' motion to dismiss Counts I through III of Kiebala's amended complaint, with prejudice.

### B. Tortious Interference with Business Expectancy Claim

Boris next moves to dismiss Kiebala's tortious interference with business expectancy claim (Count IV). (Mot. to Dismiss at 12–14.) To state a claim for tortious interference under Illinois law, Kiebala must allege "(1) his reasonable expectation of entering into a valid business relationship; (2) defendants' knowledge of his expectancy; (3) purposeful interference by the defendants preventing his expectancy from being fulfilled; and (4) damages resulting from such interference." *Hackman v. Dickerson Realtors, Inc.*, 520 F. Supp. 2d 954, 971 (N.D. Ill. 2007) (citation omitted); *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511, 568 N.E.2d 870, 877–78 (Ill. 1991).

Kiebala alleges he had a reasonable expectation of "entering into business relationships with other investors and third parties," as well as "continuing to receive job offers from potential employers, of continuing to be asked to provide his consulting services, of continuing to be asked to participate on corporate boards, of continuing to be asked to write for industry publications, and to speak at business functions." (Am. Compl. ¶¶ 113–14.) He further alleges he had a reasonable expectation "to participate in investment opportunities" and "to obtain personal credit, including credit cards and lines of credit, and of being able to continue to meet

6

his home mortgage obligation." (*Id.* ¶¶ 115–16.)  Kiebala asserts Boris knew of these expectations and intentionally interfered with his expectations by posting negative statements about Kiebala on the internet, which "affected his businesses' ability to operate profitably" and caused his businesses to lose sales, customers, investors, and income. (*Id.* ¶¶ 83, 117–19.)  As a consequence of the "loss of income from his businesses," Kiebala alleges he has suffered "financially on a personal level," leading to foreclosure on his home, a "significant drop" in his personal credit rating; denial of loans, credit card applications, personal checking accounts, and personal lines of credit; increased cost of borrowing; increased car insurance premiums; lost job offers, opportunities to participate on corporate boards, and offers for writing and speaking engagements; and an inability to solicit investments and start new companies. (*Id.* ¶¶ 83–91, 119–128.)  He also asserts that Boris' postings have interfered with the trust of "potential members of Kiebala's program or potential investors in his business model." (*Id.* ¶¶ 78–79.)  Kiebala also contends that Boris' conduct impacted his physical and emotional health, causing humiliation, embarrassment, anxiety, emotional distress, and "exacerbation of an existing medical condition." (*Id.* ¶ 92.)

Kiebala's tortious interference claim still stems from the alleged damage to his businesses and the resulting loss of income.[1]  As we have previously explained, he cannot recover for injuries that are derivative of injuries to his businesses, because he is not the real party in interest under Federal Rule of Civil Procedure 17(a).  *See Forza Techs., LLC v. Premier Research Labs,*

---

[1] We further observe that Kiebala's complaint indicates elsewhere that his financial woes predated the allegedly injurious internet posts. (*See, e.g.*, Am. Compl., Ex. C (July 2010 email in which Kiebala informs Boris about his financial issues, including stating "it's like I fell into a (cash) hole and am spinning my wheels really fast, but not getting out" and describing his "big setback while [he] was in the hospital" causing him to be unable "to get past the crisis bills (utilities, insurance, fuel) to catch back up"); *id.*, Ex. E (August 2010 email from Kiebala to Boris stating "I'm sincerely in a terrible cash crisis and I can't seem to get out.").)

7

*LP*, No. 12 C 7905, 2013 WL 6355383, at *3 (N.D. Ill. Dec. 5, 2013) (citing *Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993)). Rule 17(a) "is a procedural rule requiring that the complaint be brought in the name of the party to whom that claim 'belongs' or the party who, 'according to the governing substantive law, is entitled to enforce the right.'" *Rawoof v. Texor Petrol. Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003)). In Illinois, an action for harm to an LLC must be brought by the LLC. *Freed v. JPMorgan Chase Bank, N.A.*, No. 12 C 1477, 2012 WL 6193964, at *4 (N.D. Ill. Dec. 12, 2012) ("[T]he claim was undermined by the legal principle (applicable to LLCs as well as to corporations) that 'an action for harm to the corporation must be brought in the corporate name.'" (quoting *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996)).

Thus, Kiebala's allegations asserting harm flowing from his status as a managing member of Curvy Road and ECS are not actionable. *Forza*, 2013 WL 6355383, at *3 (allowing indirectly injured LLC managers to sue in their own names would enable "double counting" as the company also suffered an injury and managers of an LLC enjoy protections from personal liability for the debts and liabilities of the LLC). Kiebala cannot recover indirectly for losses arising from the alleged injury to his companies' profitability. *See Weissman*, 12 F.3d at 86 (concluding a corporation was the real party in interest, because even though plaintiff lost his investment in the corporation as a result of the defendant's malpractice and misrepresentation, plaintiff's injuries "derive from the fact that [the corporation] suffered a loss"); *Forza*, 2013 WL 6355383, at *3 (finding that an LLC was the real party in interest for a tortious interference claim, as opposed to its owner, even though comments giving rise to the claim targeted the owner and caused her harm due to the LLC's loss of business relationships).

Insofar as the amended complaint's allegations can be construed as personal attacks by Boris that have caused Kiebala to directly lose job offers, consulting opportunities, writing and speaking engagements, corporate board invitations, opportunities for "other business investments," and the ability to start new companies, Kiebala has also failed to plausibly allege any basis for his expectation of success in obtaining such opportunities. *United States ex rel. Blaum v. Triad Isotopes, Inc.*, 104 F. Supp. 3d 901, 931 (N.D. Ill. 2015). "A reasonable expectancy 'requires more than the hope or opportunity of a future business relationship.'" *Huon v. Breaking Media, LLC*, 75 F. Supp. 3d 747, 775 (N.D. Ill. 2014), *rev'd in part on other grounds* (quoting *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machines Corp.*, 520 F. Supp. 2d 1012, 1022 (N.D. Ill. 2007)); *see also Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503 (7th Cir. 1998) (affirming dismissal of tortious interference claim as plaintiff failed to allege any reasonable expectation of a business relationship where he did not claim that he had been offered a job by any other employer, or even that he had interviewed or applied for such positions, instead asserting conclusory statements that he had suffered a "decline in prospective business" as a result of allegedly defamatory publications); *United States ex rel. Blaum*, 104 F. Supp. 3d at 931 (explaining a plaintiff must show "more than a mere hope" to establish a tortious interference claim); *Pulliam v. Am. Exp. Travel Related Servs. Co. Inc.*, No. 08 C 6690, 2009 WL 1586012, at *6 (N.D. Ill. June 4, 2009) ("Mere hopes of an economic advantage are insufficient to support a claim of intentional interference."). Read in the light most favorable to Kiebala, his allegations establish only that he hoped to obtain various future opportunities, but his threadbare allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. As Kiebala has failed to adequately allege any reasonable business expectancy, and to the extent his claim is not otherwise

9

foreclosed because he is not the real party in interest, his tortious interference claim must be dismissed.

### C. Intentional Infliction of Emotional Distress Claim

Finally, Boris moves to dismiss Kiebala's remaining claim for intentional infliction of emotional distress (Count V), arguing it fails to state a claim and is barred by the statute of limitations under Illinois law. (Mot. to Dismiss at 8–9, 14–15.) Count V of Kiebala's amended complaint alleges that Boris, "in a disproportionate response to a financial dispute, engaged in a concerted pattern of abusive behavior towards Plaintiff," posting 14 negative reviews on various websites from December 2010 through March 2017. (Am. Compl. ¶¶ 35, 130.) Kiebala alleges the postings were "extreme and outrageous" and Boris "knowingly or recklessly disregarded the high probability that his conduct would inflict severe emotional distress upon Kiebala and his conduct did, in fact, cause Kiebala severe emotional distress." (Am. Compl. ¶¶ 141–42.)

Boris first argues the two-year statute of limitations set forth in 735 ILCS 5/13–202 bars Kiebala's claim for intentional infliction of emotional distress. *See Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 744, 761 N.E.2d 175, 186 (2d Dist. 2001) (citing 735 ILCS 5/13–202) ("We agree that the applicable statute of limitations for intentional infliction of emotional distress is two years."); *see also Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."). As we have previously explained, a cause of action for intentional infliction of emotional distress "accrues when the interest is invaded." *Pavlik*, 326 Ill. App. 3d at 745, 761 N.E.2d at 186 (citing *Hyon Waste Mgmt. Servs., Inc. v. City of Chi.*,

214 Ill. App. 3d 757, 762, 574 N.E.2d 129, 132 (2d Dist. 1991)). Thus, Kiebala's claim is barred to the extent he seeks to recover for intentional infliction of emotional distress stemming from statements made more than two years before Kiebala filed his lawsuit on July 22, 2016. Only three of the alleged postings occurred within the statute of limitations period. (Am. Compl. ¶ 35.)

However, Plaintiff argues his claims based on all of Boris' internet postings are timely under the continuing violation doctrine. (Pl.'s Resp. at 5.) Under Illinois law, "where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345, 770 N.E.2d 177, 190 (Ill. 2002). Kiebala argues Boris' 14 alleged internet postings, beginning on December 21, 2010 and continuing through March 20, 2017, "constitute a continuing pattern that brings all of the internet postings within the statute of limitations because, under the continuing tort rule, the statute of limitations begins to run at the time the last injurious act occurs." (Pl.'s Resp. at 5.) We rejected Kiebala's similar argument in our February 14, 2017 Order, and again on reconsideration, but Kiebala argues his amended complaint includes additional allegations that show a continuing and unrelenting pattern of abusive internet postings. (*Id.* at 6–8.)

We need not determine whether the amended allegations bring all of the alleged defamatory statements within the statute of limitations, because even assuming *arguendo* that Kiebala's claims are timely, he has not sufficiently stated a claim for intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, Illinois law requires: (1) "the conduct involved must be truly extreme and outrageous"; (2) the defendant "must either *intend* that his conduct inflict severe emotional distress, or know that

11

there is at least a high probability that his conduct will cause severe emotional distress"; and (3) "the conduct must in fact cause *severe* emotional distress." *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (Ill. 1988). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." *Id.* (quoting Restatement (Second) of Torts § 46, cmt. j, at 77–78 (1965)). Moreover, "the tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Id.* (quoting Restatement (Second) of Torts § 46, cmt. d, at 73 (1965)). "[T]he distress inflicted must be so severe that no reasonable man could be expected to endure it." *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 973, 569 N.E.2d 1104, 1109 (2d Dist. 1991).

Kiebala alleges Boris "acted intentionally to inflict harm and extort money" from him, and the "cumulative nature of these multiple attacks spanning over six years was extreme and outrageous." (Am. Compl. ¶¶ 132–33.) He further alleges "Boris knew that Plaintiff was struggling emotionally and financially and specifically calculated his repeated attacks to maximize harm to Plaintiff" both personally and professionally. (*Id.* ¶ 134.) While the alleged internet postings may have caused embarrassment and distress, Kiebala has failed to plausibly allege that Boris' negative consumer reviews were "truly extreme and outrageous." *Id.* Whether particular conduct is extreme and outrageous is a question of law to be determined based on all of the facts and circumstances of the case using an objective standard. *Ulm v. Mem'l Med. Ctr.*, 2012 IL App (4th) 110421, ¶ 39, 964 N.E.2d 632, 641. "To meet the 'extreme and outrageous' standard, the defendant's conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (quoting *Kolegas v. Heftel Broad. Corp.*,

154 Ill. 2d 1, 21, 607 N.E.2d 201, 211 (Ill. 1992)). "It is not sufficient 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998) (quoting *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767 (Ill. 1976)).

Moreover, "[a]s the Seventh Circuit has recognized, Illinois courts have held that a plaintiff cannot prove a claim for intentional infliction of emotional distress based upon a defendant's defamatory statements, because such statements generally do not clear the high hurdle for extreme and outrageous conduct." *Fields v. Jackson*, No. 16 C 1961, 2017 WL 4150682, at *5 (N.D. Ill. Sept. 19, 2017) (finding allegedly defamatory internet posts claiming the plaintiff owed money to the defendant "may have been offensive or distressing" but they were "not so extreme and outrageous as to sustain a claim for intentional infliction of emotional distress"); *see also Winfrey*, 141 F.3d at 331 (collecting cases). Consistent with these cases, we cannot conclude Boris' negative and allegedly defamatory online reviews of Kiebala's business practices could plausibly be considered "so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community,'" particularly where Boris did not stand in a position of power over Kiebala. *Swearnigen-El*, 602 F.3d at 864; *see also Bittman v. Fox*, 107 F. Supp. 3d 896, 905 (N.D. Ill. 2015) (granting motion to dismiss intentional infliction of emotional distress claim where defendants' conduct, which included allegedly defamatory internet posts, publishing photos of the plaintiff's house on the internet to harass and intimidate her, and creating a social media page to "impersonate and defame" plaintiff's business, while "distasteful, mean-spirited, and vindictive," did not constitute

13

sufficiently extreme and outrageous conduct); *Tabora v. Gottlieb Mem'l Hosp.*, 279 Ill. App. 3d 108, 120, 664 N.E.2d 267, 275 (1st Dist. 1996) (allegations that defendants attacked plaintiff professionally, including falsely claiming he was incompetent as an anesthesiologist, revoking his hospital privileges, and causing him to endure "constant berating" in front of the hospital staff over a five year period did not "rise to the level of extreme and outrageous conduct and severe emotional distress"); *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 273, 798 N.E.2d 75, 82 (Ill. 2003) ("Illinois cases in which the tort of intentional infliction of emotional distress has been sufficiently alleged have very frequently involved a defendant who stood in a position of power or authority relative to the plaintiff."). Accordingly, we grant Boris' motion to dismiss Count V of the amended complaint, with prejudice.

## II. MOTION FOR SANCTIONS

Finally, Boris has also filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. Boris asserts Kiebala's amended complaint "constitutes a frivolous filing as well as an abuse of process meant only to harass, prolong, and unnecessarily increase the cost of litigation." (Mot. for Sanctions at 8.) Boris argues the amended complaint seeks to re-litigate the breach of non-disclosure agreement, breach of contract, and tortious interference claims set forth in Counts I through III, all of which were previously dismissed with prejudice. (*Id.*) Boris additionally argues Kiebala's claims for intentional infliction of emotional distress and tortious interference with business expectancy fail to survive a renewed motion to dismiss and are "repetitive allegations" constituting "an attempt to rehash the same arguments" this court already decided. (*Id.*)

Rule 11(b) requires an attorney or unrepresented party to certify that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the

14

circumstances" that any pleading presented to the court "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). In addition, the rule requires an unrepresented party to certify that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.*; *see also Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 656 (7th Cir. 2003); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 859 (N.D. Ill. 2015). "The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2454 (1990)).

However, while "the Rule 11 sanction serves an important purpose, it is a tool that must be used with utmost care and caution." *Fed. Deposit Ins. Corp. v. Tekfen Const. & Installation Co.*, 847 F.2d 440, 444 (7th Cir. 1988); *see also In re Dairy Farmers of Am.*, 80 F. Supp. 3d at 860 ("To win on a motion for sanctions, the movant must satisfy the 'high burden of showing that Rule 11 sanctions are warranted.'" (quoting *Lundeen v. Minemyer*, No. 09 C 3820, 2010 WL 5418896, at *3 (N.D. Ill. Dec. 17, 2010)). Sanctions do not inevitably flow from unsuccessful legal arguments. *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 270 (7th Cir. 1993); *see also Native Am. Arts, Inc. v. Peter Stone Co., U.S.A.*, 222 F. Supp. 3d 643, 645 (N.D. Ill. 2016) ("Were this long accepted Rule to the contrary, sanctions would be automatically imposed on the loser in every case. Obviously they are not, and they are imposed only where they are necessary to deter repetition of the offending conduct."). In analyzing whether sanctions are warranted, we "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna*

*Mut. Ins. Soc. v. Office & Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (quoting *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993)). "The Court considers litigants' *pro se* status when determining whether arguments warrant sanctions, but the Court may impose sanctions on *pro se* litigants." *Ochs v. Hindman*, 984 F. Supp. 2d 903, 912 (N.D. Ill. 2013) (citing *Vukadinovich v. McCarthy,* 901 F.2d 1439, 1445 (7th Cir. 1990)).

As set forth above, Kiebala concedes Counts I through III were dismissed with prejudice and argues the "disclaimers" in the amended complaint were intended reflect that understanding. While unartfully pled, we cannot agree that Counts I through III constitute a frivolous filing or "an abuse of process meant only to harass, prolong, and unnecessarily increase the cost of litigation," as Boris urges. (Mot. for Sanctions at 8.) Moreover, while we disagree with Kiebala's attempt to amend his complaint to state claims for intentional infliction of emotional distress and tortious interference with business expectancy in Counts IV and V, that does not mean his amended complaint was frivolous or filed in bad faith without adequate investigation. Nor do we see a need to deter repetition of improper conduct through the imposition of sanctions. Although Kiebala's legal positions were ultimately unsuccessful, they were not objectively unreasonable. *Corley*, 388 F.3d at 1014 ("The fact that the underlying claim turned out to be groundless does not necessarily mean that Rule 11 sanctions are appropriate (much less required)."). Considering Kiebala's amended complaint, our previous orders, and the case as a whole, we can neither conclude Kiebala's pleading was frivolous, nor filed in bad faith, for an improper purpose, or without adequate investigation. *Id.* Accordingly, we deny Boris' motion for sanctions.

**CONCLUSION**

For the foregoing reasons, we grant Boris' motion to dismiss, and Kiebala's amended complaint is hereby dismissed with prejudice. (Dkt. No. 32.) Boris' motion for sanctions is denied. (Dkt. No. 34.) It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: September 29, 2017
Chicago, Illinois